UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-61774-CIV-MARRA/SELTZER

AGNES PIERRE,
and all others similarly situated,

    Plaintiff,

vs.

LORI-AL CLEANERS, INC., a Florida
corporation, and JAY GOLDSTEIN,
individually,

    Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendants Lori-al Cleaners, Inc. and Jay Goldstein's Motion for Summary Judgment [DE 18], filed September 6, 2006. Plaintiff Agnes Pierre filed her response on October 6, 2006. Defendants Lori-al Cleaners, Inc. and Jay Goldstein did not file a reply. The matter is now ripe for review.

I. Background

The facts, as culled from affidavits, depositions, answers, answers to interrogatories and reasonably inferred therefrom in a light most favorable to Plaintiff, for the purpose of this motion, are as follows:

Defendant Jay Goldstein ("Goldstein") is the president and owner of Defendant Lori-Al Cleaners, Inc. ("Lori-Al") ("Defendants"). (Goldstein Dep. 6, Mar. 21, 2006.) Lori-Al is a dry cleaning business whose annual gross sales volume exceed $500,000.00. (Goldstein Dep. 9; Def.

Resp. to Req. for Admis. Nos. 10-13, Ex. A, attached to Pl. Resp. to Def. Mot.)[1]  Lori-Al customers are permitted to pay with credit cards, personal checks, cash and, with proper identification, out-of-state checks. (Goldstein Dep. 21-22.)

Goldstein hired Plaintiff, Agnes Pierre ("Pierre" "Plaintiff"), and set her compensation. (Goldstein Dep. 52; Pierre Dep. 31, Mar. 21, 2006; Def. Answers to Pl. Interrog. No. 2.)  Pierre was responsible for pressing pants. (Goldstein Dep. 42; Pierre Dep. 29; Pl. Answer to Def. Interrog. No. 2.)  She would be given the pants once another employee had cleaned the pants and put the pants on a "horse." (Goldstein Dep. 52.)

Goldstein paid employees by both paycheck and cash, and he decided how much cash each employee would be given. (Goldstein Dep. 66-68.)  Goldstein employed at least 12 non-management employees and four management employees at Lori-Al. (Goldstein Dep. 37, 68.) There are several departments at Lori-Al, each responsible for either laundering shirts, dry cleaning clothing, pressing clothing, staffing the front counter or bagging and sorting clothing. (Goldstein Dep. 34-35.)

One of dry cleaning chemicals used at Lori-Al is perchloroethylene, a product purchased by Lori-Al from various Florida suppliers. (Goldstein Dep. 15.)  Those same Florida suppliers provide Lori-Al with hangers and plastic bags, and deliver these items in a truck. (Goldstein Dep. 16-17.)  Additionally, Lori-Al purchases a special dry cleaning soap that is shipped to Lori-Al via truck from a Missouri company. (Goldstein Dep. 17-18, 81-82.)  The different dry cleaning equipment at Lori-Al includes pressing machines, hot head machines, dry cleaning machines, shirt unit machinery, washing machines, boilers, air compressors, chillers and conveyors.

---

[1] Defendants concede that Lori-Al annually grosses over $500,000.00. (Def. Mot. 4.)

(Goldstein Dep. 10.)  At first, Goldstein used equipment that was already in the store when he opened Lori-Al, but he later purchased additional machinery from companies in Florida. (Goldstein Dep. 11.)   Goldstein acknowledges that some of the purchased equipment may not have been manufactured in Florida. (Goldstein Dep. 82.)

Lori-Al does provide delivery service to its steady customers (Goldstein Dep. 22.)  In fact, Lori-Al has two cargo vans, flanked with Lori-Al signs, that perform this service. (Goldstein Dep. 23.)  Goldstein gives the delivery drivers Sunoco credit cards to purchase gasoline. (Goldstein Dep. 24.)

Lori-Al does not perform leather and suede cleaning, tailoring or shoe repair on site; instead, these tasks are sent to other businesses.  (Goldstein Dep. 25.)  Goldstein mails these businesses checks for their services. (Goldstein Dep. 26.)

Defendants move for summary judgment, claiming they are not liable to Plaintiff for overtime wages under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 207(a)(1). Specifically, Defendants argue Lori-Al is not an enterprise engaged in commerce or in the production of goods for commerce, and that Plaintiff did not engage in interstate commerce at Lori-Al. (Def. Mot. at 1-2.)

## II. Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317,

323 (1986).  The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.  Anderson, 477 U.S. at 257.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may

be granted." Anderson, 477 U.S. 242, 249-50.

## III. Discussion

The FLSA requires an employer to pay overtime compensation if the employee can establish individual coverage or enterprise coverage. Thorne v. All Restoration Svcs, Inc., 448 F.3d 1264, 1265 (11th Cir. 2006); Alonso v. Garcia, 147 Fed. Appx. 815 (11th Cir. 2005) citing Dunlop v. Indus. America Corp., 516 F.2d 498 (5th Cir. 1975).[2]  While the determination of coverage under the FLSA must be resolved on the facts of each case, it is nonetheless a question of law. See Donovan v. Weber, 723 F.2d 1388, 1391-92 (8th Cir. 1984) (enterprise coverage is a matter of law but must be resolved on the facts of each case); see also Birdwell v. City of Gadsden, 970 F.2d 802, 807-08 (11th Cir. 1992) (under the FLSA, "[i]t is for the court to determine if a set of facts gives rise to liability; it is for the jury to determine if those facts exist"); Patel v. Wargo, 803 F.2d 632, 634 (11th Cir. 1986) (the determination of whether an entity is an employer under the FLSA requires individual findings of fact that lead to a legal determination).

To qualify for enterprise coverage, Defendants must "ha[ve] employees engaged in commerce or in the production of goods for commerce, or [ ] ha[ve] employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000."  29 U.S.C. § 203(s)(1)(A)(i) and (ii).  Individual coverage requires the

---

[2] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Plaintiff, at trial, to provide evidence that she was engaged in commerce or engaged in the production of goods for commerce. Thorne, 448 F.3d at 1265-66 citing 29 U.S.C. § 207 (a)(1). The phase "engaged in commerce" is interpreted broadly and liberally. Alonso, 147 Fed. Appx. 815 citing Brennan v. Wilson Bldg., Inc., 478 F.2d 1090 (5th Cir. 1973).

      Turning first to enterprise coverage, the Court begins its analysis by noting Defendants' concession that Lori-Al annually grosses over $500,000.00. (Def. Mot. 4.) Hence, the Court will focus its attention on the first prong of the enterprise test. In examining the evidence, the Court concludes that there is sufficient record evidence to support a finding that Defendants are an enterprise under the FLSA. The record indicates that Defendants employ 16 employees, who perform a myriad of duties, including laundering shirts, dry cleaning, pressing clothing, bagging and sorting clothing, and staffing the front counter. (Goldstein Dep. 34-37.) Thus, the record supports a finding that out of the 16 employees employed at Lori-Al, at least two or more of these employees, in performing their job functions, "engage[ ] in commerce or in the production of goods for commerce, or [ ] handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person." 29 U.S.C. § 203(s)(1)(A)(i); see Velez v. Vassallo, 203 F. Supp. 2d 312, 328 (S.D.N.Y. 2002) (noting enterprise coverage under the FLSA for a local laundry if the soap it used moved in interstate commerce); see also Dole v. Odd Fellows Home Endowment Bd., 912 F.2d 689, 695 (4th Cir. 1990) (employees who did laundry, cleaned and performed maintenance tasks used goods and materials that had traveled in interstate commerce); Archie v. Grand Cent. P'ship., Inc., 997 F. Supp. 504, 530-31 (S.D.N.Y. 1998) (bags, brooms, shovels, pails and scrapers used by sanitation crews are items that moved in interstate commerce); Marshall v. Sunshine and Leisure, Inc., 496 F. Supp. 354, 358-59 (M.D.

Fla. 1980) (use of cleaning products by employees of a rest home satisfies FLSA enterprise coverage).

Moreover, there is evidence that, in performing their dry cleaning and laundering functions, Defendants' employees used supplies and equipment that moved through interstate commerce. For example, Goldstein testified that he purchased numerous pieces of equipment for his dry cleaning business, and acknowledged that some of the equipment may not have been manufactured in Florida. (Goldstein Dep. 10-11, 82.) Additionally, Defendants purchased other dry cleaning chemicals, as well as hangers and plastic bags, that were delivered by truck. (Goldstein Dep. 14-17.) Most significantly, Goldstein testified that he purchased a special dry cleaning soap from Missouri. (Goldstein Dep. 17-18.) Thus, this evidence, if borne out at trial, supports a finding that Defendants' employees used supplies, products and equipment that moved in commerce.

Likewise, Defendants' outsourcing of tailoring and shoe repair, its acceptance of out-of-state checks and credit cards, and its use of credit cards by its delivery drivers, also mitigates against a finding that Defendants are not an enterprise as defined under the FLSA. Indeed, it is possible to conclude that Defendants' acceptance and use of out-of-state checks and credit cards require Defendants to access financial and banking networks that stretch throughout the United States. In a similar vein, Defendants interact with various businesses in providing certain services to their customers, including tailoring and shoe repair. By mailing checks to these vendors, Defendants engage in interstate commerce. Lastly, in providing delivery service to its customers, Defendants use two commercial vehicles. The use of commercial vehicles also supports a finding of enterprise coverage, given these vehicles may have moved through

interstate commerce.

Nonetheless, Defendants argue that the Court should find, as a matter of law, that enterprise coverage does not apply to them.  In making that argument, Defendants point to Goldstein's testimony that he purchased equipment and supplies from companies in South Florida, and not from out-of-state vendors. (Def. Mot. at 4.)  This testimony, however, merely raises the question as to whether equipment and supplies, as a whole or in part, moved in interstate commerce, prior to being sold to Goldstein by a Florida company.  Notably, in Donovan v. Pointon, the Tenth Circuit examined a land development company whose employees used various types of construction machinery to perform their work and, like in this case, the defendant asserted that he had obtained the machinery from other instate companies, and thus was not subject to enterprise coverage.  Donovan v. Pointon, 717 F.2d 1320 (10th Cir. 1983). The Donovan court rejected that argument and stated that the acquiring of goods and materials from an instate company is "irrelevant" to a determination of enterprise coverage and that the "critical issue is whether the goods or materials handled by [the defendant] and his employees had moved in interstate commerce." Id. at 1322-23.  The Court adopts the reasoning of the Donovan case, and finds that, at this juncture, the use of this equipment by Defendants support a conclusion that the equipment moved through interstate commerce.[3]

Finally, the Court rejects Defendants' reliance on Thorne for support of the position that

---

[3] Notably, Defendants state that "only" one soap was purchased from Missouri. (Def. Mot. 4.)  Given that the record supports a finding that Defendants are an enterprise, it is unnecessary for the Court to decide whether the purchase of one soap can, as a matter of law, give rise to enterprise coverage.  That stated, the Court will simply note that engagement in commerce by an employer is subject to a broad and liberal interpretation. Alonso, 147 Fed. Appx. 815 citing Brennan v. Wilson Bldg., Inc., 478 F.2d 1090 (5th Cir. 1973).

8

the use of credit cards by their delivery drivers did not constitute an engagement in interstate commerce. (Def. Mot. 4.)  In Thorne, the Eleventh Circuit addressed individual coverage under the FLSA, not enterprise coverage.  448 F.3d at 1265-66 n.1.  Clearly, then, Thorne does not apply to the analysis of enterprise coverage.[4]  Equally unpersuasive is Defendants' citation to Dunlop. (Def. Mot. 4-5.)   In that case, the former Fifth Circuit examined and analyzed the meaning of the FLSA amendments, enacted prior to 1974, and held that prior to 1974, the FLSA did not reach enterprises that simply provided services to customers.  Dunlop, 516 F.2d at 502. In doing so, the Dunlop Court stated that 1974 amendments would be applied prospectively, and noted that the 1974 amendments to the FLSA created a "broader definition" of enterprise coverage, which included enterprises whose employees handle, sell, or otherwise work on goods or materials that have been moved in commerce. Id. at 502 n.8.  Thus, these cases are unpersuasive and provide no basis for the Court to find that Defendants are, as a matter of law, not an enterprise under the FLSA. Therefore, Defendants' motion for summary judgment on this basis must be denied.

With respect to the FLSA's application to Defendants under "individual coverage," the Court notes that, although Plaintiff pled in her complaint both enterprise and individual coverage, Plaintiff no longer seeks individual coverage under the FLSA. (Pl. Resp. 13.)  Thus, the Court need not address Defendants' argument on this point.  Lastly, the Court rejects Plaintiff's request for rulings on the issue of enterprise coverage, Goldstein's status as an employer under the

---

[4] Likewise, Defendants' reliance on Kitchings v. Florida United Methodist Children's Home, Inc., 393 F. Supp. 2d 1282 (M.D. Fla. 2005) for the proposition that credit card usage cannot sustain enterprise coverage is rejected.  The Kitchings' discussion of credit card usage concerned individual coverage, not enterprise coverage. Id. at 1292-93.

FLSA, and Plaintiff's status as a non-exempt employee who worked in excess of 40 hours in one or more work weeks. (Pl. Resp. 9-12 and n.1.) Plaintiff has not moved for summary judgment on these points, as required under the Federal Rules of Civil Procedure. See Easterwood v. CSX Transportation, Inc., 933 F.2d 1548, 1566 (11th Cir. 1991), aff'd on other grounds, 507 U.S. 658 (1993) (district court may grant summary judgment on an issue only if party moves for summary judgment pursuant to Rule 56(b) and (c)).

Accordingly, there is sufficient record evidence to deny Defendants' request for summary judgment on the basis of enterprise coverage.

### IV.  Conclusion

It is **ORDERED AND ADJUDGED** that Defendants Lori-al Cleaners, Inc. and Jay Goldstein's Motion for Summary Judgment [DE 18] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 22nd day of November 2006.

_____
KENNETH A.  MARRA
United States District Judge